**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| First Chatham Bank | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C/A No.: 2:11-CV-238-PMD |
| | ) | |
| Christopher T. Landers | ) | **ORDER** |
| and Michael D. Lang | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon First Chatham Bank's ("Plaintiff" or "FCB") Motion for Summary Judgment as to Christopher T. Landers ("Defendant" or "Landers").[1]

**BACKGROUND**

Plaintiff alleges that Landers was loaned money and has failed to comply with the terms and conditions of a promissory note he signed. Specifically, FCB alleges that Defendant has not satisfied his promise to pay the note. Landers was affiliated with Atlantic Bank & Trust ("ABT") as an employee and/or director in or about February 2007. At that time Landers owned 45,700 shares of ABT stock.

On or about February 1, 2007, FCB approved Landers for a commercial loan, loan #7000030. The loan amount was $315,000.00 and the interest rate was 8.5%. Landers pledged his ABT stock as collateral for the loan. FCB took possession of the stock certificates at that time. FCB has retained possession of the certificates, but they remain in Landers' name.[2] The

---

[1] This Court ordered a stay as to Defendant Michael D. Lang after he filed for bankruptcy. *See* Order of Abstention as to Defendant Lang, Sep. 13, 2011.

[2] FCB incorrectly asserted in its Motion for Summary Judgment that it was not in possession of the collateral. *See* Pl.'s Mot. for Summ. J. 9. Landers noted the error in his response. *See* Def.'s Res. to Pl.'s Mot. for Summ. J. 5 (citing Ex. 1, FCB's Collateral Receipt form, evidencing receipt of the stock certificates on February 1, 2007). Then in its Reply, FCB clarified that while it does have physical possession of the stock certificates "the collateral remains

loan matured on February 1, 2008. When the loan matured, Landers did not satisfy the loan; he secured an extension of the maturity date until February 1, 2009. On February 1, 2009, Landers secured another extension of the maturity date; the maturity date was extended until June 1, 2009. On June 1, 2009, Landers executed a promissory note for the principal amount of $316,575.00 with a maturity date of December 11, 2010. On May 13, 2010, the loan was converted to a "single pay loan" with a new maturity date of September 11, 2010. The loan was not paid on September 11, 2010, and FCB has not granted any additional extension of the loan. FCB highlights the following relevant language found in the promissory note executed on June 1, 2009:

> **PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of Three Hundred Sixteen Thousand Five Hundred Seventy-Five and 00/100 Dollars ($316,575.00) and all interest and any other charges, including service charges, to the order of the Lender . . . .
>
> \* \* \* \*
>
> **INTEREST RATE AND SCHEDULED PAYMENT CHANGES.**
> The interest rate on this Note will be fixed at 7.0% per annum.
>
> \* \* \* \*
>
> **DEFAULT**. Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), . . . Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note to be immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other agreement, security agreement executed in connection with this Note (individually, a "Loan Document"). . . . Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

---

in Landers' name and has never been 'tendered' by Landers to FCB in satisfaction of the subject loan." Pl.'s Reply in Supp. of Summ. J. 4. Landers has not disputed FCB's factual clarification that while it retains possession of the stock certificates, they have never been tendered by Landers to the Bank.

\* \* \* \*

> **ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees. Attorneys fees shall not exceed 15 percent of the principal and interest owing.

Pl's Mot. for Summ. J. 3-4 (citing Comp. Ex. D).

## PROCEDURAL HISTORY

FCB filed a complaint alleging that Landers failed to perform on the loan agreement. Landers filed an answer denying FCB's allegations and asserting affirmative defenses on February 28, 2011. Plaintiff's Motion for Summary Judgment was filed on March 14, 2011, less than two months after this action commenced. In response, Defendants filed Motion for a Deferral of the Court's Review of Plaintiff's Motion for Summary Judgment. The Court granted Defendant's Motion for a Deferral of the Court's Review of Plaintiff's Motion for Summary Judgment on May 3, 2011, because discovery was still outstanding regarding information relating to one of the loans that is the subject of this lawsuit. Upon the completion of that discovery, Landers responded to the Motion for Summary Judgment. That motion is currently before the Court.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).  Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## ANALYSIS

### (a) Fed. R. Civ. P. 56(d)[3]

Defendant Landers asserts that additional discovery is still necessary and requests that the Court extend the time for him to fully respond to the Motion for Summary Judgment.  The Court previously granted a similar motion.  However, at that time the additional discovery sought by Defendant related to the loan itself and Defendant filed the required affidavit explaining with specificity the need for additional discovery.

Now Defendant requests in its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment additional discovery consisting of "information relating to bank practices on approving loans, valuing collateral [,] liquidating collateral upon borrower default [,]" and "documents showing the value of [ABT] stock from 2007 . . . to the present."  Def.'s Res. Pl.'s Mot. for Summ. J. 2-3.  Landers states that this information "may further support" his position in opposition of summary judgment.  Def.'s Res. Pl.'s Mot. for Summ. J. 3.

Fed. R. Civ. P. 56(d) provides that if a nonmovant to a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," then the Court may delay ruling upon the motion for summary judgment. Defendant does not state with specificity, nor has attorney for defendant attached the required

---

[3] Effective December 1, 2010, the Fed. R. Civ. P. were amended.  Prior to that time Fed. R. Civ. P. 56(f) addressed the delay of summary judgment due to insufficient discovery.  Although that rule was slightly different, "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Advisory Committee Notes on Fed. R. Civ. P. 56.

4

affidavit explaining why the additional information is necessary to respond fully to Plaintiff's motion for summary judgment. *See e.g. Worster v. United States Postal Service,* 28 Fed. Appx. 324, 326 (4th Cir. 2002) (stating that "[w]here a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule [56(d)] by filing an affidavit, there is no abuse of discretion in denying the motion to extend time and granting summary judgment, if it is otherwise appropriate."); *See also Merchant v. Prince George's County M.D.*, No. 10–1268, 2011 WL 2451528, *1 (4th Cir. June 21, 2011) (holding that "nonspecific requests for discovery in [an] opposition memorandum did not serve as a 'functional equivalent' of a Rule 56(d) affidavit").

Therefore, to the extent Defendant moves the Court to further delay summary judgment in order to conduct additional discovery, the Court denies that motion. Defendant has not stated with specificity the reasons why additional discovery is needed, but instead has merely stated in his Memorandum in Opposition to Plaintiff's Motion for Summary Judgment that additional discovery may further support his response.

**(b) Summary Judgment**

In its Motion for Summary Judgment, FCB seeks to reduce the debt to judgment. FCB asserts that it "is entitled to a judgment against Landers for $316,575.00, plus interest in the amount of $18,897.77, plus $61.56 per day hereafter, and attorneys fees are ongoing." Pl.'s Mot. for Summ. J. 9.

Defendant argues that summary judgment is inappropriate because the value of Landers' ABT stock on the date of Landers' default, and FCB's policies and procedures for valuing and liquidating collateral are genuine issues of material fact. Specifically, Landers claims that "[FCB] has failed to turn over any documents showing a valuation of the pledged collateral at the

inception of the loan and at the date of default, and instead, stated that Landers' represented to [FCB] that the stock was worth more than the amount of the loan." Def.'s Res. to Pl.'s Mot. for Summ. J. 7.  According to Landers, only after the ATB stock is valued and sold in commercially reasonable manner can FCB establish any deficiency and seek a deficiency judgment.

Plaintiff responds by arguing that it is entirely permissible to seek a deficiency judgment without first disposing of the collateral; therefore, the value of the collateral and any procedures associated with the valuation are irrelevant to the Motion for Summary Judgment.  Plaintiff cites *Andrews v. von Elten & Walker, Inc.*, 432 S.E.2d 500 (S.C. 1993) as support for the argument that it was permissible to bring this action for a deficiency judgment before disposing of the stock.  In that case, Andrews sued von Elten & Walker for non-payment under a non-competition contract and a consulting contract.  *Id.* at 501.  Those two contracts were related to the sale of a vending machine business between the parties.  *Id.*  Von Elten & Walker had purchased the business, but the purchase price was separated into three categories: equipment, the non-competition agreement, and the consulting agreement.  *Id.*  The von Eltens signed a personal guarantee securing payment of the two non-equipment agreements.  Andrews lawfully repossessed the business and brought suit against the von Eltens on the personal guarantee of the non-competition and consulting agreements.  *Id.* On appeal the South Carolina Court of appeals first addressed the following issue:

> The first question presented is a legal one: may Andrews retain the collateral and initiate the instant action on the non-competition and consulting agreements? Stated another way, was Andrews required to dispose of the collateral in a commercially reasonable manner as a condition president to recovery on those agreements.

*Id.*  The court held that nothing in the UCC prohibits a secured party in possession of the collateral from proceeding first on a guarantee, because "[u]nder both the security agreement and

the UCC, Andrews's remedies as a secured creditor are cumulative and he should not be 'required to reduce himself to the position of an unsecured creditor so long as he acts in a commercially reasonable manner and does not . . . impair the position of [his] debtor.'" *Id.* at 503 (quoting *ITT Terryphone Corp v. Modems Plus, Inc.* 320 S.E.2d 784, 786 (Ga. 1984).

In this case, like in *Andrews*, the security agreement provided that FCB's remedies for default were cumulative and were as extensive as those allowed by law. The security agreement states in pertinent part:

> REMEDIES: After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
>
> (1) Make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
>
> (2) Require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
>
> (3) Enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
>
> (4) Use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured debts.

Comp., Exhibit A (Security Agreement page 2 of 2). The UCC also provides for cumulative remedies and allows FCB to reduce the claim to judgment. *See* S.C. CODE 36-9-601(a) (1) ("After default, a secured party has the rights provided in this part and . . . those provided by agreement of the parties. A secured party: may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure . . . ."). Therefore, FCB is not required to dispose of the collateral, but may instead seek a deficiency judgment.

Defendant argues that even if it is permissible for the secured party to bring the action while in possession of the collateral, summary judgment is inappropriate because the value of the collateral is still uncertain. In *Andrews,* after having found it permissible for Andrews to sue on the guarantee, in spite of the fact that he still possessed the collateral, the court held that until the value of the collateral was accounted for Andrews was not entitled to a deficiency judgment, because he was unable to overcome the presumption that the repossessed collateral was equal to the debt. *Id.* ("Andrews attempts to avoid the consequences of [the presumption that the repossessed collateral is equal to the secured indebtedness] by suing on the guarantee agreement. This may not be done without accounting for the value of the collateral."). Landers argues that a deficiency judgment is inappropriate until the issues regarding the value and valuation of the stock are resolved.

Defendant's argument fails because this case is not identical to *Andrews*. In *Andrews*, the court based its decision on the inability of the creditor to overcome the presumption that the repossessed collateral had a value equal to the debt. *Id.* ("In *Mathias v. Hicks*, 363 S.E.2d 914, 916 (S.C. Ct. App. 1987), we held that there is a rebuttable presumption that repossessed collateral is equal to the secured indebtedness. The burden of proof is on the creditor to show otherwise and only if he 'rebuts the presumption may he maintain [an] action for the deficiency.'"). *Id.* In this case, FCB did not repossess the collateral. In fact, the stock certificates, although in FCB's physical possession, remain in Landers name. Because the stock is not repossessed collateral, it is not presumed to have a value equal to the debt. Thus, there is no presumption to overcome, and FCB is entitled to exercise its rights under the UCC and the security agreement to seek a deficiency judgment for Landers failure to perform the promise to pay on the note.

Therefore, the Court finds that under the terms of the security agreement and provisions of the UCC, FCB is entitled to bring an action for a deficiency judgment on a guarantee, without having first acted on the collateral. Landers does not dispute that he has failed to perform his promise to pay under the note. That being the case, FCB is entitled to a judgment for the amount of the note, interest, and attorneys fees.

## CONCLUSION

Based on the foregoing, the court **ORDERS** that Plaintiff's Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**September 29, 2011**
**Charleston, SC**

9